**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  04-40141-01, 02 |
| ) | |
| ARLAN DEAN KAUFMAN and ) | |
| LINDA JOYCE KAUFMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Before the court is defendant Linda Kaufman's motion for limited reconsideration of defendants' joint Franks motion (Doc. 236).  The standards pertaining to motions for reconsideration are well known.  See Comeau v. Rupp, 810 F. Supp. 1172, 1174-75 (D. Kan. 1992).  In this case, defendant asserts that the court misapprehended her position because it did not recognize that the parties had agreed that all exhibits attached to pretrial motions would be admissible without objection as substantive evidence (Doc. 198).  In its memorandum and order denying defendants' joint motion (Doc. 234), the court noted that a number of the exhibits attached to defendants' joint motion (Doc. 134) were not authenticated.  In doing so, it overlooked the parties' agreement.  Therefore, the court has revisited defendants' joint motion and reply (Docs. 134 and 184) to determine whether reconsideration of its decision denying the joint motions is warranted.[1]

---

[1] The court has reviewed the following exhibits which it previously considered to be unauthenticated.
Tab 2 are written reports of interviews of four "victims" by

Defendant's motion for reconsideration does not take issue with the law cited by the court pertaining to <u>Franks</u> motions. No purpose will be served by reconsideration of the court's observations concerning defendant Arlan Kaufman's "Warning: Nude People at Work" letter. Authenticated or not, the letter remains undated and there is no evidence Special Agent Filson knew of the letter at the time he prepared the search warrant affidavit. Even if he did, his failure to mention the letter has no bearing on the validity of the warrant. Similarly, the court declines to revisit the claims regarding the Hays and Presley affidavits. The court considered them to be properly authenticated.

Returning to the misrepresentations and omissions set forth on pages 11-16 of defendants' joint motion, the court makes the

---

Captain Craig Murphy of the Butler County Sheriff's Department. Each of the interviews occurred in November 1999 in the presence of defendant Linda Kaufman. Tab 3 are applications submitted by defendant Arlan Kaufman and a report of alleged violations concerning Arlan Kaufman filed by Craig Murphy. Only the first page of the report is attached, so the substance of the violations cannot be determined. Tab 5 is a petition filed in the District Court of Harvey County, Kansas by Arlan Kaufman, conservator and guardian for two of the "victims" against several individuals, including Edmon Lundblade, a Newton police officer. Tab 6 is a memorandum pertaining to a "group meeting" held in February 1993 which discusses, inter alia, the dress code at Kaufman house, including nude behavior by the residents. Tab 7 is an "incentive agreement" dated May 19, 1996 for one of the residents who apparently enjoys public nudity. Tab 8 is a supplemental narrative report by Mark M. Mathias concerning his investigation of defendant Arlan Kaufman. Tab 12 is a letter dated February 29, 2000 from Michael S. Sizemore, counsel for four of the "victims" in connection with a subpoena for defendant Arlan Kaufman's records. Tab 13 contains letters from defendant Arlan Kaufman to Phyllis Gilmore concerning subpoenas apparently issued by the Behavioral Sciences Regulatory Board. Tab 14 is a document entitled "group therapy" submitted by defendant Arlan Kaufman. Tab 15 is a letter dated May 1987 to Jean Davidson from Joetta Prost, clinical psychologist, pertaining to licensing of a residential care facility owned by defendant Arlan Kaufman.

following observations:[2]

### Defendants Claim that Agent Filson made the Following Misrepresentations

"When Butler County Sheriff's Officers arrived at Dr. Kaufman's farm, Dr. Kaufman told them that 'the nude people were under his care and were undergoing nude psychiatric therapy sessions which included carpentry type work on the barn.' Police reports do not indicate this." *There are no identifiable "police reports" attached to the joint motion. Therefore, it is impossible to tell whether there was a misrepresentation.*

"Police discovered these 'nude people provide labor to Mr. Kaufman without being paid for it.' Interviews of the patients indicate that the labor was provided as repayment for a trip to Florida or on a voluntary basis." *The trip to Florida is mentioned only in the interview of one "victim," Mary Ellen Howard. The other reports of the interviews of three "victims" reflect their statements that they were working on a voluntary basis and Agent Filson's affidavit notes this.*

"The patients were 'adult dependants.' In fact, only some had legal guardians and all lived in a group home that does not offer the type of services necessary for the survival of dependant adults." *The motion does not cite the authority for this statement. The patients were "adults." Even if the statement "adult dependants" is a misrepresentation (and the court does not find that it is) it certainly is not a material misrepresentation.*

---

[2]Double quotation marks indicate defendants' statement justifying reconsideration. Italics signify the court's response.

"Agent Filson repeated police assertions that were nothing more than wild speculation that the patients were under the control of Arlen and Linda Kaufman and that the nudism was clearly a program of and blessed by Arlan D. Kaufman." *Once again, the motion does not document the alleged "police assertions." However, based on the totality of the materials attached to the joint motion, it seems clear that nudism clearly was at least tolerated by defendant Arlan Kaufman.*

"The claim of the comparative billings are 'for peers' in a like profession. In fact, the comparison is to social workers with vastly different types of clients." Similarly, defendants claim as a material omission Agent Filson's failure "to inform the Court that the 'peers' in the comparison do not provide services to chronic schizophrenics." *Defendants' motion does not direct the court to anything in the record from which the court can determine whether there was a misrepresentation or a material omission. For all the court knows, these assertions may be nothing more than opinions of counsel. It is not the court's job to fly-speck the record in an effort to uncover support for an allegation.*

<u>Defendants Assert that Agent Filson</u>
<u>made the Following Material Omissions</u>

Failure to note that Dr. Kaufman provided a letter to police explaining the nudity. *A broad reading of Arlan Kaufman's "Warning: Nude People at Work" letter may offer some explanation of the nudity but, once again, there is no evidence that Agent Filson knew about the letter when he prepared the affidavit.*

Failure to mention that "Dr. Kaufman's letter provided to the

-4-

police explaining the nudity and contradicting the 'free labor' misrepresentation." *Once again, there is no evidence that Agent Filson knew about the letter.*

"The residents had a prior bad experience with police, resulting in two of them, BT and KR suing a Newton police officer. This is particularly relevant to the assertion that the residents were under the control of Linda Kaufman because they seemed nervous and looked to her before answering." *Presumably defendants are referring to the Harvey County lawsuit. Two of the "victims" were plaintiffs. Whether these persons even recalled their alleged "bad experience" cannot be determined. Captain Murphy interviewed <u>four</u> residents and all four reportedly looked at Linda Kaufman before they would answer Captain Murphy's questions. If this is an omission, it certainly is not material.*

Finally, defendants assert a number of material omissions and misrepresentations regarding the statements of Martin W. Wetzel, M.D. Dr. Wetzel was subpoenaed by defendants to testify at the August 30 hearing. Defendants then withdrew the subpoena. The only information in the record regarding what Dr. Wetzel might have said is the following statement in defendants' response to the court's order requiring a summary of witnesses' testimony (Doc. 198):

> Dr. Wetzel authored the April 30, 2001, review and determinations regarding the access to Medicare Part B benefits for five patients treated by defendant Dr. Alan [sic] Kaufman. Dr. Wetzel denied access to benefits in all five cases. He assert [sic] that Dr. Kaufman's documentation was inadequate and that the frequency of group therapy was excessive. Dr. Wetzel will testify about his contact with government agents prior to the submission of the 2001 search warrant affidavit to Judge

-5-

>Humphreys. He will testify about medicare requirements for documentation as well as the appropriate frequency of group psychosocial therapy for schizophrenics.

This summary does nothing to support defendants' claims of material omissions and misrepresentations by Dr. Wetzel.

The court has considered all of the other claims of misrepresentation and material omissions set out in defendants' joint motion. The alleged misrepresentations and material omissions relate to small, isolated portions of Agent Filson's detailed 22 page affidavit and, whether considered individually or collectively, none serve as a basis for reconsideration of the court's Memorandum and Order denying defendants' motion.

Defendant Linda Kaufman's motion for reconsideration (Doc. 236) is denied.

Dated this ___12th___ day of September 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-6-